UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

CONRAD MINOR,                          )
                                       )
        Plaintiffs,                    )
                                       )
v.                                     )        No. 4:12CV549 HEA
                                       )
MID-CENTURY INSURANCE                  )
COMPANY,                               )
                                       )
        Defendant.                     )

## OPINION, MEMORANDUM AND ORDER

This matter is before the Court on Defendant's Motion for Summary

Judgment, [Doc. No. 14]. Plaintiff opposes the motion. For the reasons set forth

below, the motion is granted.

## Facts and Background[1]

Defendant Mid-Century Insurance Company issued policy number 14

16314-08-20, (Policy A) to Mark Miner[2] and Theresa Miner, parents of Plaintiff.

Policy A was effective from December 30, 2009 through June 20, 2010. Defendant

---

[1] Defendant has filed a Statement of Uncontroverted Facts. Plaintiff, in contravention of this Court's Local Rule 7-4.01(E), failed to specifically controvert any of Defendant's facts. Likewise, Plaintiff failed to present his own Statement of Uncontroverted Facts. Consequently, Defendant's Statement of Uncontroverted Facts is taken as admitted by Plaintiff.

[2] Although the caption names Plaintiff Conrad Minor, the policies were issued to Mark Miner. Defendant believes the correct spelling of Plaintiff's last name is 'Miner."

also issued policy number 14 18405-36-20 (Policy B) to Mark Miner, Plaintiff's father. Policy B was effective from January 16, 2010 through July 16, 2010.

Defendant issued policy number 14 16892-97-09 (Policy C) to Mark Miner. Policy C was effective from JANUARY 14, 2009 through May 14, 2010.

Defendant issued policy number 14 18388-51-89 (Policy D) to Mark Miner. Policy D was effective from January 16, 2010 through June 16, 2010. Defendant issued policy number 14 17559-64-23 (E) to Mark Miner. Policy E was effective from December 16, 2009 through May 9, 2010.

Policies A, B, C, and D each include Endorsement MO 025, and Policy E includes Endorsement E1179j, relating to under insured motorist coverage. The language of the endorsements are identical:

> We will pay all sums which an insured person is legally entitled to recover as damages from the owner or operator of an under insured motor vehicle because of bodily injury sustained by an insured person. The bodily injury must be caused by an accident, and arise out of the ownership, maintenance or use of the under insured motor vehicle.

> The policies define an under insured motor vehicle as:

> Under insured motor vehicle--means a land motor vehicle to which a bodily injury liability bond or policy applies at the time of the accident but its limits for bodily injury liability are less than the limits of liability for this coverage.

> Each Policy's limit of liability for under insured motorist coverage is

$100,000.

On May 5, 2010, Plaintiff was seated on the trunk of a vehicle when the driver, Taylor Cox, drove away and Plaintiff fell from the vehicle.

Cox was insured under two automobile liability insurance policies with policy limits of $100,000 each. Plaintiff has been paid the policy limits of both of Cox's policies.

Cox's two policies limits of $100,000 are equal to each of Defendant's policies. Taken together, Cox's total policy limits of $200,000 is greater than Defendant's policy limits of $100,000.

Plaintiff's accident did not arise out of the ownership, maintenance or use of an "under insured motor vehicle," as defined in Defendant's policies.

The Limits of Liability section of the policies, paragraph e provides:

> We will pay no more than the limits stated in the policy regardless of the number of named insureds, insured vehicles in the household, insured persons, claims, claimants, policies or under insured motor vehicles involved in the occurrence.

The Other Insurance provision of the policies states:

> 1. If any other Underinsured Motorist Coverage applies to a loss covered hereunder, we will pay only our share. Our share is the proportion that our limits of liability for Underinsured Motorist Coverage hear to the total of all applicable limits for Underinsured Motorist Coverage

2.  We will not provide insurance for a vehicle other than your insured car or your insured motorcycle, unless the owner of that vehicle has no other insurance applicable hereunder.

3.  If any applicable insurance other than this policy is available to an insured person through us or any other member company of the Farmers Insurance Group of Companies, the total amount payable among this policy and all other such policies shall not exceed the limits provided for the single vehicle with the highest limits of liability.

The policies contain separate provisions for uninsured motorists coverage and underinsured motorists coverage.  The Policies' Declarations denominate the underinsured motorists coverage separately from the uninsured motorists coverage.

## Summary Judgment Standard

The standards for summary judgment are well settled.  In determining whether summary judgment should issue, the Court must view the facts and inferences from the facts in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Woods v. DaimlerChrysler Corp.,* 409 F.3d 984, 990 (8th Cir. 2005).  The moving party has the burden to establish both the absence of a genuine issue of material fact and that it is entitled to judgment as a matter of law.  Fed.R.Civ.P. 56(c); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986); *Celotex Corp. v.*

*Catrett*, 477 U.S. 317, 322 (1986); *Enter. Bank*, 92 F.3d at 747. Once the moving party has met this burden, the nonmoving party may not rest on the allegations in his pleadings but by affidavit or other evidence must set forth specific facts showing that a genuine issue of material fact exists. Fed.R.Civ.P. 56(e); *Anderson* 477 U.S. at 256; *Krenik v. Le Sueur*, 47 F.3d 953, 957 (8th Cir. 1995). "'Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment.' *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986)." *Hitt v. Harsco Corp.,* 356 F.3d 920, 923 (8th Cir. 2004). An issue of fact is genuine when "a reasonable jury could return a verdict for the nonmoving party" on the question. *Anderson,* 477 U.S. at 248; *Woods v. DaimlerChrysler Corp.,* 409 F.3d at 990. To survive a motion for summary judgment, the "nonmoving party must 'substantiate his allegations with sufficient probative evidence [that] would permit a finding in [his] favor based on more than mere speculation, conjecture, or fantasy.' *Wilson v. Int'l Bus. Machs. Corp.*, 62 F.3d 237, 241 (8th Cir. 1995)(quotation omitted)." *Putman v. Unity Health System*, 348 F.3d 732, 733-34 (8th Cir. 2003). "[A] complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Celotex*, 477 U.S. at 323. The Court will review the facts in this case with the stated standards in mind.

**Discussion**

  This is a diversity case, and Missouri law applies. "As with any other contract, the interpretation of an insurance contract is generally a question of law, particularly in reference to the question of coverage." *D.R. Sherry Constr., Ltd. v. Am. Family Mut. Ins. Co.*, 316 S.W.3d 899, 902 (Mo.banc 2010), citing *H.K. Porter Co. v. Transit Cas. Co.*, 215 S.W.3d 134, 140–41 (Mo.App.2006). Missouri courts interpret terms in an insurance contract according to their plain meaning. *Shahan v. Shahan*, 988 S.W.2d 529, 535 (Mo.banc 1999). "The plain or ordinary meaning is the meaning that the average layperson would understand." *Id.* Ambiguities are resolved in favor of the insured. *Burns v. Smith*, 303 S.W.3d 505, 509–10 (Mo.banc 2010). "Missouri ... strictly construes exclusionary clauses against the drafter, who also bears the burden of showing the exclusion applies." *Id*. "Exclusion clauses are strictly construed against the insurer, especially if they are of uncertain import." *Aetna Cas. & Sur. Co. v. Haas*, 422 S.W.2d 316, 321 (Mo.1968); see also *Bituminous Cas. Corp. v. Walsh & Wells, Inc*., 170 S.W.2d 117, 121 (Mo.App.1943).

 *Spirtas Co. v. Nautilus Ins. Co.*, 715 F.3d 667 (8th Cir. 2013).

  In interpreting the policies at issue, the Court must adhere to certain rules.

"Rules governing the interpretation of insurance policies are well settled." *Shahan v. Shahan,* 988 S.W.2d 529, 535 (Mo. 1999) (en banc). In interpreting an insurance contract, courts "read the contract as a whole and determine the intent of the parties, giving effect to that intent by enforcing the contract as written." *Mo. Employers Mut. Ins. Co. v. Nichols*, 149 S.W.3d 617, 625 (Mo.App. 2004). Language used in an insurance contract is given its plain and ordinary meaning.

*Id.; Farmland Indus. Inc. v. Republic Ins. Co.,* 941 S.W.2d 505, 508 (Mo. 1997)

(en banc). Plain or ordinary meaning is the meaning that the average layperson

would understand, as determined by consulting standard English language

dictionaries. *Shahan,* 988 S.W.2d at 535. Where insurance contracts are written

in plain and unambiguous terms, the court must enforce the policy according to

those terms, *Rice v. Fire Ins. Exch.,* 946 S.W.2d 40, 42 (Mo.App. 1997), and rules

of construction are inapplicable. *Mansion Hills Condo. Ass'n v. Am. Family Mut.*

*Ins. Co.,* 62 S.W.3d 633, 637 (Mo.App. 2001). The Court may not distort

unambiguous policy language to create an ambiguity. *Am. Motorists Ins. Co. v.*

*Moore,* 970 S.W.2d 876, 878 (Mo.App. 1998) (citing *Krombach v. Mayflower Ins.*

*Co.,* 827 S.W.2d 208, 210 (Mo. 1992) (en banc)). Nor may a court "use its

inventive powers to ... rewrite a policy to provide coverage for which the parties

never contracted, absent a statute or public policy requiring coverage." *Lang v.*

*Nationwide Mut. Fire Ins. Co.,* 970 S.W.2d 828, 830 (Mo.App. 1998) (citing

*Rodriguez v. Gen. Accident Ins. Co.,* 808 S.W.2d 379, 382 (Mo. 1991) (en banc)).

In order to establish coverage under an insurance policy, plaintiffs are

required to establish: "(1) issuance and delivery of the policy; (2) payment of the

premium; (3) a loss caused by a peril insured against; and (4) notice and proof of

loss to the insurer. *Kauble v. MFA Mut. Ins. Co.,* 637 S.W.2d 831, 832-33

(Mo.App.1982)." *Valentine-Radford, Inc. v. American Motorists Ins. Co.* 990 S.W.2d 47, 51 (Mo.App. W.D.,1999); *Missouri Commercial Inv. Co. v. Employers Mut. Cas. Co.,* 680 S.W.2d 397, 400 (Mo.App. E.D. 1984); *Grossman Iron & Steel Co. v. Bituminous Cas. Corp.,* 558 S.W.2d 255, 259 (Mo.App.1977).

The policy limits of all of Cox's policies is *not* less than the coverage limits of liability of Plaintiff's underinsured motorist coverage, and therefore, Cox's vehicle is not an underinsured vehicle. *Rodriguez v. General Accident Ins. Co. of America*, 808 S.W.2d 379 (Mo. banc 1991).

Plaintiff argues that the Policy's Limits of Liability section is ambiguous, and that in the Liability section of the policy, the Other Insurance provision renders the anti-stacking language of the policy ambiguous and unenforceable.

Plaintiff argues that in Defendant's Limits of Liability section, paragraph a indicates that it will pay the difference between the actual amount of his damages and the amount that he has already been paid, or the limits of liability contained in the policy, whichever is the lesser. According to Plaintiff, by the plain reading of the language in paragraph a, a is not limited by paragraph c-h. Therefore, according to Plaintiff, he is not limited by the anti-stacking language contained in paragraph e.

Plaintiff strains to create an ambiguity. The policy language clearly

indicates otherwise. Paragraph e, (the anti-stacking clause), clearly reinforces the limits of liability stated in Paragraphs a and b. Under a and b, Defendant will pay no more than the limits of liability. Paragraph e reiterates this. Defendant "will pay no more than the limits stated in the policy regardless of" any other factors. Nothing could be less ambiguous through repeating the intent that Defendant's limit of liability is the policy limit of $100,000 from wherever obtained.

Plaintiff also argues that the "Other Insurance" clause creates an ambiguity. His reliance on *Long v. Shelter Insurance Companies*, 351 S.W.3d 692 (Mo App 2011) is misplaced. Unlike the *Long* other insurance clause, the Other Insurance clause of Defendant's policy at issue does not contain any "excess" language which was the reason for the *Long* ambiguity. In the matter here, the policy provides:

Other Insurance

1. If any other Under insured Motorist Coverage applies to a loss covered herundre, we will pay only our share. Our share it the proportion that our limits of liability for Underinsured Motorist Coverage bear to the total of all applicable limits for Underinsured Motorist Coverage.

2. We will not provide insurance for a vehicle other than your insured car or your insured motorcycle, unless the owner of that vehicle has no other insurance applicable hereunder.

3. If any applicable insurance other than this policy is available to an

insured person through us or any other member company of the Farmers Insurance Group of Companies, the total amount payable among this policy and all other such policies shall not exceed the limits provided for the single vehicle with the highest limits of liability.

The Other Insurance clause of Defendant's policy at issue contains an unambiguous anti-stacking provision, which is reinforced by paragraph e, of the Limits of Liability section: We will pay no more than the limits stated in the policy regardless of . . . policies. . .

Plaintiff points to page 6 of the insurance policy for his position that the policy contains an "excess clause." As Defendant correctly argues, the policy and the underinsured motorist endorsement do not contain the "excess" language to create an ambiguity. The Other Insurance clauses contain general anti-stacking language that reinforces the anti-stacking clause of the Limits of Liability section.

## Conclusion

In interpreting the insurance policy at issue, the unambiguous terms of that policy establishes that the policy prohibits stacking of policies, and as such, Plaintiff is not entitled to recover from Defendant because he has already received an amount equal to the Limits of Liability in the policy.

Accordingly, defendants are entitled to judgments as a matter of law.

**IT IS HEREBY ORDERED** that Defendant's Motion for Summary

Judgment, [Doc. No. 14], is granted.

A separate judgment in accordance with this Memorandum and Order is entered this same date.

Dated this 11th day of February, 2014.

_____
HENRY EDWARD AUTREY
UNITED STATES DISTRICT JUDGE